UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MACLEAN TOWNHOMES, LLC, a Washington limited liability company, as assignee of American Heritage Builders, a Washington corporation,

    Plaintiff,

v.

CHARTER OAK FIRE INSURANCE CO., a foreign insurance company,

    Defendant and Third-Party Plaintiff,

v.

FIRST SPECIALTY INSURANCE COMPANY, a foreign insurance company,

    Third-Party Defendant.

CASE NO. C06-1093BHS

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE PROPERTY DAMAGE ISSUES

This matter comes before the Court on Defendant's Motion for Summary Judgment re Property Damage Issues. Dkt. 118. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part Defendant's motion for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On August 3, 2006, Plaintiff MacLean Townhomes, LLC filed a complaint for declaratory relief and monetary damages against Defendant Charter Oak Fire Insurance Co. Dkt. 1. Plaintiff's claims are based on the assignment of an insurance contract

ORDER – 1

between assignor American Heritage Builders (AHB) and Defendant Charter Oak. Dkt. 56 at 1.

MacLean was the developer and builder of the Summerhill Village Condominium ("the Condominium"), a 166-unit condominium located in Issaquah, Washington. Declaration of Chris Landschulz ("Landschulz Decl."), Dkt. 57, ¶¶ 3, 4. MacLean developed the Condominium in three phases and each phase included 10 separate buildings (for a total of 30 buildings at the Condominium). *Id*.

On August 23, 1999, MacLean entered into a subcontract ("Subcontract") with AHB under which AHB agreed to install all siding, exterior wood trim, weather resistive barrier, and soffits on Phase 2 of the Condominium. *Id*. ¶ 5. AHB finished working on Phase 2 in December 1999. Declaration of Chad Hansen ("Hansen Decl."), Dkt. 60, ¶ 4. On February 23, 2000, MacLean and AHB extended the Subcontract to include Phase 3 of the construction project. *Id*. ¶ 5.

Defendant Charter Oak insured AHB under a "Commercial General Liability" insurance policy, policy number IO-680-464175, with an August 18, 2000 through August 18, 2001 policy period. Declaration of Gregory L. Harper ("Harper Decl."), Dkt. 59, Exh. A ("Policy"). The Policy has limits of $1,000,000 "each occurrence" and $2,000,000 in the "aggregate." *Id*. at 14, 64. According to the Policy's insuring clause, it covers "those sums that the insured becomes legally obligated to pay." *Id*. at 59.

In early 2003, the Summerhill Village Condominium Owners Association ("the Association") first notified MacLean about alleged construction defects and resulting property damage at the Condominium. Landschulz Decl., ¶ 7. The Association alleged that damage was resulting from, among other things, defects in the performance of AHB's work on Phases 2 and 3 of the Condominium. *Id*., Exh. B.

While the Association and MacLean were negotiating a settlement of the defects, MacLean filed a lawsuit against AHB (and several other subcontractors) in King County Superior Court ("the Underlying Action"). *Id*., ¶ 9. MacLean sued AHB for both breach

ORDER – 2

1 of contract and indemnity for MacLean's liability to the Association. *Id*. AHB tendered
2 the defense of the Underlying Action to Charter Oak.

On March 3, 2005, MacLean and AHB executed a Settlement Agreement, Assignment of Rights and Covenant Not to Execute. Landschulz Decl., Exh. E ("Settlement Agreement"). The amount of the Settlement Agreement was $1,806,219.06. *Id*. In addition, AHB assigned to MacLean all of its contractual and extra-contractual claims and causes of action against its liability insurers, including Charter Oak. *Id*. In return, MacLean agreed to enforce the Stipulated Judgment only against AHB's insurance companies. *Id*.

On June 10, 2008, Defendant filed a Motion for Summary Judgment Re Property Damage Issues. Dkt. 118. On July 7, 2008, Plaintiff responded. Dkt. 147. On July 11, 2008, Defendant replied. Dkt. 158.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – *e.g.*, a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on the following four issues:

> 1)      the subject policy of insurance provides coverage only for actual property damage proximately caused by AHB's work;
> 2)      there is no coverage for any property damage to AHB's own work or own product;
> 3)      there is no recovery under the policy for impaired property which is not physically damaged; and
> 4)      there is no recovery for "get to" costs which involve AHB's own work or own product.

Dkt. 118 at 2.

The Ninth Circuit has set forth a three-step process to determine what claims are covered by policies such as the one before this court: (1) whether there was an "occurrence" giving rise to the alleged damages; (2) whether any of the alleged damages are "property damage"; and (3) whether the property damages are nevertheless barred from coverage by a specific exclusion under the policies. *Dewitt Const. Inc. v. Charter*

ORDER – 4

*Oak Fire Ins. Co.*, 307 F.3d 1127, 1133 (9th Cir. 2002)[1]. The court considered these questions issues of contract interpretation. *Id.*

In Washington, the interpretation of insurance policy language is a question of law. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480 (1984). Definitions provided in the policy are controlling. *Overton v. Consolidated Ins. Co.*, 145 Wn.2d 417, 427 (2002). However, if a term is left undefined, it is given the plain and ordinary meaning found in a standard English dictionary. *Id.* at 428.

### 1. Occurrence

In this case, whether coverage has been triggered by an "occurrence" involves questions of fact. *See* Dkt. 134. Plaintiff alleges damages due to AHB's work, whereas Defendant claims that the alleged damages were not because of AHB's work. *Id.* Taking the facts in the light most favorable to the Plaintiff, there has been "occurrence" that falls within the policies definition.

### 2. Property Damage

The subject insurance contract provides that "[Defendant] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Dkt. 59-2 at 59. "Property damage" means: (a) "physical injury to tangible property, including all resulting loss of use of that property" or (b) "loss of use of tangible property that is not physically injured." *Id.* at 69.

It is undisputed that AHB and its subcontractors (collectively "AHB") were hired to "install all siding, exterior wood trim, and soffits" to the buildings in question. *See* Dkt. 58, Declaration of Mark Lawless ("Lawless Decl."), ¶ 8 (listing numerous other specific duties). Plaintiff alleges property damage to the framing and sheathing of the Condominiums. *Id.* ¶ 12. Plaintiff does not allege that the siding that was installed by AHB was damaged. *Id.* ("the siding itself was not physically injured"). Plaintiff's expert,

---

[1] It is important to note that the court added a fourth question regarding "consequential damages." *See id.* at 1136.

ORDER – 5

however, concluded that "[l]ocating and repairing all of the underlying sheathing and framing that was damaged from the defects in the siding installation required removing and replacing all [AHB's work]." *Id.* ¶ 14. Thus, the question is one of damage because of AHB's work and not one of damage to AHB's work.

In Washington, for faulty workmanship to give rise to property damage, there must be property damage separate from the defective product itself. *Yakima Cement Products Co. v. Great American Ins. Co.*, 93 Wn.2d 210, 216-219 (1980) (no property damage occurred due to the incorporation of defective concrete panels where record was devoid of evidence that the building value was diminished). *See also Marley Orchard Corp. v. Travelers Indem. Co.*, 50 Wn. App. 801, 806-807 (1988) (stress to trees was property damage caused by the installation of a defective sprinkler system, unlike *Yakima Cement* where there was no damage separate from the defect).

In this case, taking the facts in the light most favorable to Plaintiff, there is property damage separate from the defective AHB work itself. Therefore, for the purposes of this motion, Plaintiff has shown some "property damage" that is within the scope of the policy.

### 3. Applicability of Exclusions

The Court must next analyze whether any exclusion under the policies bar coverage. *See supra*. Defendant bears the burden of proving that property damages that fall within the scope of the policy are excluded from coverage. *See, e.g., Am. Star Ins. Co. v. Grice*, 121 Wn. 2d 869, 874-75 (1993) (insurer bears the burden of proving that a loss is not covered because of an exclusionary provision). Exclusions are strictly construed against the insurer because they are contrary to the protective purpose of insurance. *See Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wn. App. 335, 341 (1999).

Defendant claims that three exclusions apply: (1) "your work" or "your product" exclusion; (2) "impaired property" exclusion; and (3) "get to" costs exclusion. Dkt. 118 at 11-19.

### a. "Your work" or "Your Product"

Defendant claims that the insurance policy does not apply to the following:

j. Damage to Property

"Property damage" to:

\*\*\*

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Dkt. 118 at 11 (quoting insurance policy (Dkt. 59-2 at 61)).

Defendant argues that Washington courts have upheld these exclusions and that these exclusions have been the subject of litigation around the country. Dkt. 118 at 11-12. Whether the exclusions are enforceable is not in question; the application of these exclusions is the question before the Court.

Defendant argues that "a general liability policy is not a performance bond or product liability insurance." Dkt. 158 at 9 (citing *Schwindt v. Underwriters at Lloyd's of London*, 81 Wn. App. 293, 302 (1986)). Defendant claims that Plaintiff has conceded that there is no damage to AHB work and/or product. Dkt. 158 at 9. Defendant therefore concludes that there is no coverage for AHB's work or product. *Id.*

ORDER – 7

1 Plaintiff contends that these exclusions are irrelevant because the exclusions only bar coverage "to" AHB's work and/or product. Dkt. 147 at 18. Plaintiff claims that it is seeking damages for property damage caused *by* AHB's faulty work and not damage to AHB's work. *Id*. Plaintiff therefore concludes that any exclusion for property damage to AHB's work is inapplicable to the facts of this case. *Id*. at 21. Although Plaintiff's argument essentially make these exclusions moot, Defendant is entitled to judgment on the interpretation of these exclusions.

Therefore, Defendant's motion for summary judgment is granted on this issue to the extent that the "your work" and "your product" exclusions bar coverage for damage to AHB's work and/or product.

### b. Impaired Property or Property Not Physically Injured

Defendant claims that the insurance policy does not apply because of the following exclusions:

> m. Damage to Impaired Property or Property Not Physically Injured
>
> "Property damage" to "impaired property" or property that has not been physically injured arising out of:
>
> (1) A defect, deficiency, inadequate or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Dkt. 118 at 14 (quoting insurance policy (Dkt. 59-2 at 61)). "Impaired property" means:

> tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:

ORDER – 8

    a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b. Your fulfilling the terms of the contract or agreement.

Dkt. 59-2 at 67.  Defendant argues that Plaintiff's alleged damages are excluded by both the "impaired property" portion of this exclusion and the "property not physically injured" portion of this exclusion.

  Defendant initially argued that the "building is simply impaired" and, therefore, the exclusion applies.  Dkt. 118 at 16.  The extent of the damage is a question of fact that has yet to be determined.  *See* Dkt. 134.

  Next, Defendant argues "that the impaired property exclusion applies to bar coverage for the siding and the building paper, to which Plaintiff admits that there is no physical damage."  Dkt. 158 at 10-11.  Plaintiff, however, is not seeking coverage for damage to the siding or building paper.  Defendant further argues that "[a]bundant evidence has been presented that the minor damage to the sheathing and framing could be repaired through isolated removal of the siding system."  Dkt. 158 at 12.  Plaintiff contends "that if any non-policyholder work must also be repaired, then the 'impaired property' exclusion does not apply."  Dkt. 147 at 23.  These positions make it evident that there is a question of fact as to what property has neither been impaired nor physically injured because of AHB's defective work.  Therefore, Defendant's motion for summary judgment is denied on this issue because there is a question of material fact as to what property will qualify for this exclusion.

    **c. "Get to" Costs**

  Defendant argues that Plaintiff should not be entitled to "get to" costs.  Dkt. 118 at 16-19.  Defendant does not argue that this is an enforceable exclusion of the insurance contract. Defendant admits that this is an anticipatory argument and that Plaintiff's hypothetical argument is "not supported by applicable Washington law in this regard." *Id*. at 17.  Plaintiff neither responded to nor advanced any arguments that related to

ORDER – 9

Defendant's anticipatory "get to" costs theory. Defendant claims that, because Plaintiff failed to respond, Defendant is entitled to summary judgment on this issue. Dkt. 158 at 2.

Defendant's request is confusing. A party is entitled to summary judgment if "there is no genuine issue as to any material fact *and* that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). While Defendant argues that Plaintiff's arguments would not be "supported by applicable Washington law," Defendant fails to show how its arguments are supported by applicable Washington or Ninth Circuit law. In other words, Defendant is requesting that the Court issue an advisory opinion on a question of first impression based on an unopposed pleading. The Court will not accept that invitation mainly because Defendant's arguments relate more to the issue of consequential damages and warranty coverage than they do to supposed "get to" costs. *See* Dkt. 118 at 16-19. The Court considers the former issues below.

Therefore, Defendant's motion for summary judgment is denied on the issue of "get to" costs because Defendant has failed to show that it is entitled to judgment as a matter of law.

**4. Consequential Damages**

The insurance policy at issue provides for indemnification of the insured for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which the insurance applies." *See supra*. In construing similar language, the Washington Court of Appeals determined that the policy allowed for consequential damages. *Marley Orchard*, 50 Wn. App. at 806-807. The plaintiff in Marley was allowed to recover for expenditures reasonably made in an effort to avoid or minimize damages. *Id. See also Gen. Ins. Co. of Am. v. Gauger*, 13 Wn. App. 928, 931-32 (1975) (finding that once the definition of property damage is satisfied, "any and all damages flowing therefrom and not expressly excluded from the policy are covered").

Plaintiff argues that consequential damages include not only the damaged sheathing and framing but also the removing and replacing of all of AHB's work. Dkt.

ORDER – 10

147 at 14. Plaintiff claims that these damages are "because of" AHB's defective work. *Id*. Plaintiff is requesting an overly broad definition of damages that "flow from" the alleged deficiencies. There remains a question of fact as to what property was or is actually damaged as opposed to merely impaired or not physically injured at all. *See supra*. Thus, there is an issue of fact as to what portion of AHB's work needed to be removed and replaced because of damaged property as opposed to the portion of AHB's work that needed to be replaced simply because it was defective. Defendant claims that the residing "on all four walls of the 30 buildings" was the major cost of the repairs to the Condominiums when only "minimal" framing and siding needed to replaced because of actual water damage. Dkt 16-17. Defendant is correct when it asserts that holding the insurer liable for replacing all of the insured's work when only minimal damaged property exists would turn the insurance claim into a warranty obligation. *Id*. at 18. Defendant, however, is incorrect when it asks the Court to draw the line between insurance coverage and warranty obligations as a matter of law, especially when questions of fact exist as to the extent of the damages. It is within the province of the factfinder to determine what property is damaged and, therefore, what property is covered by the insurance contract.

If the factfinder concludes that none of the sheathing or framing is barred by any of the exclusions, then Plaintiff may recover for expenditures reasonably made in an effort to avoid or minimize damages. Those reasonable expenditures will also be a question of fact for the factfinder. Plaintiff may argue that the removal and replacement of the siding is a reasonable expenditure to avoid or minimize its damages to the property. Defendant may counter that removing and replacing all the siding is not a reasonable expenditure that an insurance company is required to pay and, therefore, should not be included in this insurance action. While the Court will express no opinion on the validity of these arguments, the parties have produced evidence showing that there exists

sufficient questions of material fact as to the extent of damage and the expenditures reasonably made to avoid or minimize that damage.

Therefore, Defendant's summary judgment motion is denied as to the issue of limiting Plaintiff's recovery to only the damaged sheathing and framing because there are questions of material fact on this issue.

### III. ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment Re Proprety Damage Issues (Dkt. 118) is **GRANTED in part** and **DENIED in part** as stated herein.

DATED this 14th day of August, 2008.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER – 12