UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MACLEAN TOWNHOMES, LLC, a
Washington limited liability company, as
assignee of AMERICAN HERITAGE
BUILDERS, a Washington corporation,

Plaintiff,

v.

CHARTER OAK FIRE INSURANCE
COMPANY, a foreign insurance
company,

Defendant.

CASE NO. C06-1093BHS

AMENDED FINDINGS OF
FACT, CONCLUSIONS OF
LAW, AND ORDER RE:
REASONABLENESS OF
SETTLEMENT

This matter comes before the Court on MacLean Townhomes, LLC's ("MacLean") request for a determination by the Court that the MacLean and American Heritage Builder's settlement amount was reasonable. The Court, having considered testimony from witnesses during a multiple-day hearing, all exhibits admitted at the hearing, and the remainder of the file herein, enters these Findings of Fact and Conclusions of Law.

## I. LEGAL AUTHORITY

Under Washington law:

(1) A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. The court may for good cause authorize a shorter notice period. The notice shall contain a copy of the proposed agreement. A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured. If an agreement was entered into prior to the filing of the action, a hearing on the issue of the reasonableness of the amount paid at the time it was entered into may be held at any time prior to final judgment upon motion of a party.

ORDER - 1

> The burden of proof regarding the reasonableness of the settlement offer shall be on the party requesting the settlement.
> (2) A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.
> (3) A determination that the amount paid for a release, covenant not to sue, covenant not to enforce judgment, or similar agreement was unreasonable shall not affect the validity of the agreement between the released and releasing persons nor shall any adjustment be made in the amount paid between the parties to the agreement.

RCW 4.22.060.

The Washington Supreme Court has set forth nine factors the court should consider to determine the reasonableness of a settlement between joint tortfeasors.[1] *Glover v. Tacoma General Hosp.*, 98 Wn.2d 708, 711, 717 (1983). However, no one factor controls and the trial judge has discretion to weigh each case individually. *Id.* In a recent opinion, the Washington Court of Appeals stated that "in construction defect cases which involve contractual obligations to indemnify . . . protecting the insurer from excessive judgments that are the product of collusion or fraud between the claimant and insured, is the main concern." *Heights at Issaquah Ridge Owners Ass'n v. Derus Wakefield I, LLC*, 187 P.3d 306, 309 (citing *Besel v. Viking Ins. Co.*, 146 Wn.2d 730, 738-739 (2002)). The court concluded that "[t]he remaining Glover factors, otherwise applicable in a tort case, are relevant here only to the extent they inform the questions of bad faith, collusion, and fraud." *Id.*

---

[1] The releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

ORDER - 2

## II. FINDINGS OF FACT

The Court finds as follows:

1. American Heritage Builder ("AHB") executed a subcontract with MacLean to install the vinyl siding, weather resistant barrier, flashings, and exterior wood trim for Phases 2 and 3 of the Summerhill Village Condominium (the "Condominium").

2. Phases 2 and 3 of the Condominium involved 20 buildings and 110 units.

3. After the Condominium's construction, the Summerhill Village Condominium Homeowners Association ("HOA") notified MacLean about alleged construction defects and resulting property damage at the Condominium.

4. MacLean settled with the HOA for $3,759,254.

5. On March 23, 2004, MacLean filed suit against AHB and other subcontractors.

6. Charter Oak Fire Insurance Company ("Charter Oak") engaged Steve Wraith to provide a defense for AHB in that action.

7. In the months that followed, MacLean, AHB, and Charter Oak conducted various inspections and developed different reports on the scope of work and cost of repairs necessary to correct the alleged deficiencies in AHB's work.

8. There were construction defects in AHB's work in virtually all of the buildings that were part of Phases 2 and 3 of the Condominium project.

9. MacLean hired other subcontractors to complete the roofing, decking, columns and concrete portions of the Condominiums. Those contracts were also responsible for construction defects at the points of transition between their work and AHB's work.

10. Nearly all of the damage to the building components under the siding occurred at the aforementioned points of transition.

11. Some of the defective construction at aforementioned points of transition may have also been the result of defective design.

12. The scope of repairs for AHB's possible defective work and resulting damage ranged from $127, 955.80 to $1,820,549.82.

13. On September 24, 2004, MacLean demanded $1,833,348.30 from AHB to settle the action, which was the total of $1,820,549.82 for repair/damages and $12,798.48 for AHB's share of fees and costs in the MacLean\HOA action.

14. On December 17, 2004, MacLean and AHB held a mediation.

15. In advance of the mediation, Mark Thorsrud, Charter Oak's coverage attorney, had asked Richard Dykstra, AHB's privately retained attorney, for Mr. Wraith's evaluation of MacLean's claim. Mr. Thorsrud did not receive a response.

16. Mr. Wraith was not consulted about the scheduling of the mediation and was not able to attend the mediation. Mr. Wraith sent an associate attorney in his stead.

17. Mr. Thorsrud attended the mediation; however, he was isolated in a room by himself and was never contacted by anyone, including the mediator, during the meditation.

18. There was no hard bargaining conducted at the mediation. AHB did not make a counter offer of any kind to MacLean's demand either before or during the mediation.

19. Maclean and AHB, however, did work out terms of a settlement agreement. Those terms were that: (1) AHB would accede to MacLean's full demand in the amount of $1,806,219.06; (2) the stipulated judgment would include a covenant by MacLean not to execute on the judgment against AHB; and (3) AHB would assign to MacLean the rights of its insurance claim against Charter Oak.

20. AHB's president, Gary Hansen, did not think that anyone would have to pay the $1,806,219.06 settlement amount or that the amount was a reasonable figure.

21. The settlement agreed to in principle did not take into consideration in any material or discernible manner the following factors that would in most circumstances result in a settlement amount substantially less than the full amount that was demanded by MacLean:

ORDER - 4

a. Two days before the mediation Mr. Wraith was able to obtain a summary judgment dismissing MacLean's causes of action for indemnification under the contract documents. Mr. Wraith was preparing a similar motion for summary judgment on the only remaining meaningful claim that was alleging breach of contract by AHB.

b. There was no significant damage attributable to defective installation by AHB of the weather resistant barrier ("WRB") or siding in any location on the buildings except at transition points, which may have been caused in whole or in part by defective construction conditions attributable to other subcontractors or architect's design.

c. There was no apparent consideration of applying an allocation of responsibility for the defects and resulting damage to any of the other implicated subcontractors, the developer/general contractor, or the architects. There was clear evidence that these entities or individuals had substantial responsibility for the damages contained in the demand made to AHB.

d. MacLean's attorney, Lori McKown (previously Lori O'Tool), had communicated to Mr. Wraith that the value of the case was between $300,000 and $500,000.

e. A partial re-clad, though not acceptable to the HOA, was and is a generally accepted remediation of defective construction involving improperly installed WRB and siding. A partial strip and re-clad of the 20 buildings might have been performed for less than $800,000.

f. Mr. Wraith, who had the primary responsibility for defending AHB in the underlying litigation and was familiar with MacLean's negotiation and settlement of similar cases, had opined that the value of MacLean's claim was around $300,000.

        g.      The repair would provide upgrades over the original construction even if the original construction had been fully in compliance with the plans and specifications.

22. Although Mr. Hansen was concerned about claims against his company for amounts that may have put his company out of business, there was no urgency to settle with MacLean. The trial was months away and discovery was ongoing. Mr. Thorsrud had complained to Mr. Dykstra about the lack of timely provided and organized information that was necessary to make an evaluation of the case before the December mediation.

23. AHB should have spent more time and effort to bring a united approach to the first stages of settlement negotiations and mediation before excluding its insurer from meaningful participation in the process.

24. On January 7, 2005, Mr. Dykstra informed Mr. Wraith that MacLean and AHB had settled.

25. On March 3, 2005, MacLean and AHB entered into a Settlement Agreement, Assignment of Rights and Covenant Not to Execute. As part of that agreement, AHB stipulated to a judgment in favor of MacLean in the amount of $1,806,219.06. In addition, AHB assigned to MacLean all of AHB's contractual and extra-contractual claims and causes of action against its liability insurers, including Charter Oak. In return, MacLean agreed to enforce the stipulated judgment only against AHB's insurance companies.

### III. CONCLUSIONS OF LAW

The Court concludes as follows:

1. MacLean has failed to meet its burden in showing that the MacLean/AHB settlement amount of $1,806,219.06 was reasonable.

2. The settlement should be reduced by the reasonable amount of $606,219.06.

# IV. ORDER

Therefore, it is hereby

**ORDERED** that the MacLean/AHB settlement amount of $1,806,219.06 is reduced by $606,219.06.

DATED this 9th day of October, 2008.

　　　　　　　　　　　　　*/s/ Benjamin H. Settle*
　　　　　　　　　　　　　BENJAMIN H. SETTLE
　　　　　　　　　　　　　United States District Judge